UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DONNIE R. COLEMAN,

    Plaintiff,

v.                                                                Case No: 6:16-cv-1660-Orl-41JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff, Donnie R. Coleman, seeks judicial review of the denial of his claims for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

## BACKGROUND

### A.    Procedural Background

    Plaintiff filed an application for disability insurance benefits on January 28, 2013. (Tr. 140–41.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 84–94.) Plaintiff then requested an administrative hearing. (Tr. 97–98.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 26–62.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 9–21.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–4.) Plaintiff then timely filed a

complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1953, claimed disability beginning on January 25, 2013. (Tr. 140.) Plaintiff has an associate's degree in nursing. (Tr. 32.) Plaintiff alleged disability due to degenerative disc disease, pain in his back, hips, legs, and feet, and emotional problems. (Tr. 63.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since January 25, 2013, the alleged onset date. (Tr. 14.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, generalized osteoarthritis of the hips and legs, and mild tibial neuropathy. (Tr. 14.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.) The ALJ then concluded that Plaintiff retained the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) except he can lift, carry, push and pull ten pounds frequently and 20 pounds occasionally. He is able to sit for four hours at a time, for a total of eight-hours per day, and stand and/or walk a total of two hours at a time, for a total of six-hours per day. The claimant can never climb ropes, ladders or scaffolds. He can occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl. He should avoid concentrated exposure to vibrations and hazards including unprotected heights and dangerous machinery.

(Tr. 15.)

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 17, 19.)

The ALJ concluded that Plaintiff is able to perform his past relevant work as an occupational nurse. (Tr. 19.) Further, the ALJ determined that Plaintiff is capable of performing other jobs existing in the national economy and, therefore, made alternative findings at step five of the sequential process. (Tr. 19.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a hospital admittance clerk and a hospital information clerk. (Tr. 20–21.) Accordingly, the ALJ found Plaintiff not disabled. (Tr. 21.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20

C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff raises one challenge to the ALJ's decision. Plaintiff contends that the ALJ erred in his evaluation of the opinion of Plaintiff's treating physician, Dr. David Ratliff. Specifically, Plaintiff contends that although the ALJ gave Dr. Ratliff's opinion great weight, the ALJ mischaracterized Dr. Ratliff's opinion.

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, ability to perform despite impairments, and physical or mental restrictions. *Winschel v. Comm'r Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (internal quotation and citation omitted). When assessing the medical evidence, the ALJ must state, with particularity, the weight afforded to medical opinions and the reasons for such assignment of weight. *Id.* at 1179; *see Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.").

Failure to specify the weight afforded to a medical opinion is reversible error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982) (remanding for further consideration where the ALJ's decision failed "to mention the appellant's treating physician and the weight, if any, the ALJ gave to the treating physician's evidence and opinion"). This standard applies equally to the opinions of treating and non-treating physicians. *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015). A treating physician's opinion is "given substantial or considerable weight unless good cause is shown to the

contrary." *MacGregor*, 786 F.2d at 1053. Importantly, however, while all medical opinions must be considered, a physician's opinion that a claimant is disabled or unable to work is not a medical opinion entitled to "any special significance" because this is an opinion on an issue "reserved to the Commissioner." 20 C.F.R. § 404.1527(d); *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877–78 (11th Cir. 2013).

Dr. Ratliff began treating Plaintiff in September 2012 for lower back pain that radiated to his right hip and leg. (Tr. 273.) On April 12, 2013, Dr. Ratliff completed a U.S. Department of Labor form in connection with Plaintiff's claim under the Family and Medical Leave Act ("FMLA"), a form titled "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)." (Tr. 337–39, 342–44.) Dr. Ratliff listed Plaintiff's conditions of degenerative disc disease, lumbar radiculopathy, lumbar spondylosis, and lumbar facet arthropathy. (Tr. 342.) These conditions cause radiating pain in Plaintiff's lower back. (*Id.*) Dr. Ratliff opined that the probable duration of Plaintiff's condition was "[l]ife." (*Id.*)

Dr. Ratliff opined that Plaintiff's condition would cause him to be incapacitated for treatment and recovery for an estimated eight to ten days. (Tr. 343.) He stated that Plaintiff will require intermittent injections in his back every three to four months. (*Id.*) Further, Dr. Ratliff opined that, in the next six months, Plaintiff would experience two to three flare-ups every two months for eight to ten hours per episode that would prevent Plaintiff from performing his job functions. (*Id.*)

In response to a question asking Dr. Ratliff to estimate the part-time or reduced work schedule Plaintiff requires, Dr. Ratliff answered, "pt unable to work." (*Id.*) However, in response to the question of whether Plaintiff is unable to perform any of his job functions due to his condition, Dr. Ratliff answered, "no." (Tr. 342.)

In assessing Plaintiff's RFC, the ALJ discussed Dr. Ratliff's opinion and accorded it great weight. (Tr. 18.) The ALJ evaluated Dr. Ratliff's opinion as follows:

> As for the opinion evidence, David M. Ratliff, MD gave the claimant a note for work stating that he would be unable to perform his job duties or work when he had injections for his pain, for a period of eight to ten days. However, the claimant was noted to be capable of performing his job functions despite his condition (Exhibit 4F). Dr. Ratliff's opinion regarding the claimant's ability to perform his job duties is given great weight as he was the claimant's pain injection provider and was in the best position to give an opinion regarding the claimant's functional capabilities. Additionally, records from the claimant's pain management physician, Brendon Coughtry, MD, do not include any functional limitations opined by said doctor. Dr. Ratliff's opinion was given in respect to the amount of leave the claimant needed for treatment of his condition and was not intended to be an opinion regarding his long-term functioning.

(Tr. 18.)

Plaintiff argues that Dr. Ratliff's opinion was not merely a "note for work," as the ALJ characterized it. (Dkt. 14 at 11.) Specifically, Plaintiff argues that the ALJ's finding that Dr. Ratliff's "opinion was given in respect to the amount of leave the claimant needed for treatment of his condition and was not intended to be an opinion regarding his long-term functioning," (Tr. 18), is belied by Dr. Ratliff's opinion that Plaintiff's condition would last his lifetime (Tr. 338). (Dkt. 14 at 12.) In response, Defendant argues that "while the degenerative disc disease condition might be permanent, Dr. Ratliff did not indicate that the severity, frequency, duration, and treatment of Plaintiff's symptoms would be permanent" and that Dr. Ratliff's opinion about flare-ups was regarding flare-ups Plaintiff may experience over "the next 6 months" (Tr. 343). (Dkt. 17 at 9.)

Further, Plaintiff argues that the ALJ focused on Dr. Ratliff's answer in the negative of whether Plaintiff would be unable to perform his work functions (Tr. 342), to the detriment of Dr. Ratliff's opinions regarding the debilitating nature of Plaintiff's flare-ups and, importantly, Dr. Ratliff's opinion that Plaintiff is unable to work (Tr. 342–43). (Dkt. 14 at 11.) In response,

Defendant argues that Dr. Ratliff's opinion that Plaintiff is unable to work (1) was in the context of completing a FMLA form to Plaintiff's employer regarding Plaintiff's ability to work as a registered nurse, and (2) is not an opinion entitled to any weight because it is a determination reserved to the Commissioner. (Dkt. 17 at 9.)

Because the ALJ accorded Dr. Ratliff's opinion great weight, this is not a situation in which the ALJ failed to articulate good cause for according a treating physician less than substantial weight. Instead, Plaintiff argues that the ALJ mischaracterized the nature of Dr. Ratliff's opinion and emphasized certain portions of his opinion over other aspects. As an initial matter, Dr. Ratliff's opinion that Plaintiff is "unable to work," (Tr. 343) is not a medical opinion entitled to deference. Opinions that a claimant is disabled or unable to work "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d). Such an opinion is not entitled to "any special significance." *Id.* § 404.1527(d)(3).

Further, upon review of Dr. Ratliff's opinion, the ALJ did not mischaracterize Dr. Ratliff's opinion. The ALJ accurately summarized Dr. Ratliff's opinion, noting that Dr. Ratliff found that Plaintiff would be unable to perform his job duties for a certain period, but Dr. Ratliff found that Plaintiff was capable of performing his job activities. (Tr. 18, 342–43.) As Defendant noted, this opinion was provided to Plaintiff's employer as part of an application for FMLA leave, and while Dr. Ratliff found that Plaintiff's *condition* would persist for life, his opinion about the effect of Plaintiff's flare-ups was for "over the next 6 months." (Tr. 343.) Finally, other than Dr. Ratliff's opinion that Plaintiff is unable to work (Tr. 343), which is not a medical opinion, and Dr. Ratliff's opinion about Plaintiff's flare-ups for the six months following his opinion (Tr. 343), Plaintiff does

not identify any specific limitations identified by Dr. Ratliff that the ALJ failed to incorporate into his RFC assessment.

Finally, the ALJ's careful consideration of Dr. Ratliff's treatment records demonstrates that the ALJ properly evaluated Dr. Ratliff's opinion. (Tr. 16.) Specifically, the ALJ explained that Plaintiff began treatment for his lower back pain in September 2012. (Tr. 16.) Although he received temporary relief from steroid injections administered by Dr. Ratliff, his pain would return. (*Id.*) Over the course of his treatment, Plaintiff "continued to follow-up for medication management with no significant changes noted on his physical examinations." (*Id.*)

The ALJ's summary is supported by substantial evidence in the record. After first treating Plaintiff in September 2012, Dr. Ratliff ordered an MRI of Plaintiff's lower spine, which showed mild degenerative disc disease. (Tr. 273, 275, 282.) In a follow-up appointment, Plaintiff reported that his symptoms were aggravated by walking and relieved by "over the counter medication acetaminophen." (Tr. 283.) Plaintiff agreed to try bilateral lumbar facet injections, which were administered the following day. (Tr. 280–81, 287.) A month later, in a follow-up visit, Plaintiff reported that the injections provided "exquisite relief for 2-3 weeks" but that he had increased pain thereafter. (Tr. 293.) He reported having fallen and that his legs "go numb." (Tr. 293.) In December 2012 and January 2013, Plaintiff received additional injections. (Tr. 308–12, 316–26.)

In February 2013, Dr. Ratliff administered bilateral radiofrequency ablations. (Tr. 298–301, 303–07.) Plaintiff underwent nerve conduction velocity testing in March 2013, administered by Dr. Naveed Ahmed, which showed a suggestion of mild right posterior tibial neuropathy. (Tr. 345–46.) In an April 2013 follow-up visit with Dr. Ratliff, Plaintiff reported "considerable right radicular pain with radiation" down his leg to his feet. (Tr. 333–36.) He received steroid injections in May 2013 from Dr. Brendon Coughtry, a provider at the same office as Dr. Ratliff. (Tr. 364–

68.) In follow-up appointments with Dr. Coughtry, Plaintiff reported continued pain, and Dr. Coughtry continued to manage Plaintiff's pain medications. (Tr. 347–52, 359–63, 375–78, 380–84.)

Thus, a review of the record demonstrates that the ALJ considered and accurately summarized Dr. Ratliff's underlying treatment notes. Nonetheless, as here, when the ALJ's decision is supported by substantial evidence, this Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" in the place of the ALJ's even if the evidence preponderates against the ALJ's decision. *Bloodsworth*, 703 F.2d at 1239; *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (reversing the district court because it "improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision"). Accordingly, because the ALJ did not mischaracterize Dr. Ratliff's opinions, and his decision shows that he considered and accurately summarized Dr. Ratliff's underlying treatment notes, it is recommended that Plaintiff's contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1. The decision of the Commissioner be **AFFIRMED**.

2. The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on June 13, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Carlos E. Mendoza
Counsel of Record